Next case on the calendar is a lawyer for Kramer here yet? We'll move now to Davis-Garrett. May it please the Court, my name is Brian Heller, I'm an attorney for Blair Davis-Garrett. This case is about making sure that lower courts do not use summary judgment to shut out victims of age discrimination. There are two images that truly demonstrate what this case is about. The first takes place in the back of a pallet in the back of the Westchester Mall in June 2013, where Blair Garrett is sitting on a pallet next to her supervisor. Blair is there to discuss her desire to advance within anthropology, to become a supervisor for an open position. And her 33-year-old supervisor says to her, it would be completely impossible for her to be promoted because she did not have the energy or the stamina and she was too old for the job. This statement, that Blair was too old for a job, was cut to her core. It talked about how anthropology viewed her as a person and how it was denying her opportunities based on her age. How do you respond to the argument that the very same people that Garrett is now claiming discriminated against her also promoted her twice and granted her requests to transfer stores twice? Those present many factual questions as far as the two promotions go. One promotion was from being a seasonal employee to a full-time employee. There was no advancement, no additional responsibilities. And the second promotion happened because Blair complained that she was told she was too old for the position. She called the hotline and then she, after a perfunctory interview, she received that position, reporting to the same person who told her she was too old for that job. And that person's, that supervisor's conduct revealed she did not believe that Blair could do the job. She had previously told her she wouldn't have the energy or the stamina for the role. She'd have to do all the closings and openings. And so after she got the promotion, she tells her now she has to do a special way of training, which no one else had to do. She had to do ten openings in a row and ten closings in a row. Within ten days, she's telling Ms. Garrett that she's the worst supervisor she had ever seen. So to say that, well, because she got the promotion, there was no hostility in the workplace, doesn't look at the facts the way they are. This is like this court's decision in Cross versus New York City Transit Authority, where plaintiffs were reluctantly promoted and then there were efforts to try to demote them. So in this case, the promotion's not dispositive. You look at the hostility that she experienced, and it's not just the comments that Ms. Garrett's pointing to. It's the totality of the experience, the being relegated to the fitting room, being passed over for a promotion in favor of a 24-year-old recent college graduate. Failing an audit, having her pace and speed criticized. These everyday indignations. In the brief, you argue hostile work environment and you argue retaliation. Is there a straight discrimination claim? Well, the hostile environment- Apart from hostile environment. When you say straight discrimination came, there's two options. There's hostile environment or some type of adverse employment action. In this case, it's a perfect example of how a hostile work environment can be discrimination. Quite often, plaintiffs assert them separately, and I'm just wondering if that was done here or- No, I mean, to the extent that her termination could be deemed- Folded into hostile environment. Right, what the motivation is for the various actors was it, was she terminated because of her age by the supervisor she had had before, who she had sent her to the fitting room at a previous environment. But here, things really changed because of Davis's complaint. She complained twice to the hotline, and then the third time she complains to the hotline, she's terminated within weeks. She had taken steps to find another role at Edgewater, New Jersey. It's a store that many people do not want to go to because it's not in New York. And she was there, she had an interview, it went very well, they were desperately in need of personnel, and she got a job there. And when her district manager dragged her feet in processing the move, she complained to the hotline. And this manager she complained about, Amy Shear, who had previously handled Blair's complaints about that young supervisor, said on a phone call where she learned about Blair's complaint to the hotline, said she's not going to Edgewater. She's going to go to Greenwich, Connecticut, a place that she had never discussed before, where they already had an apparel supervisor. The employer argues that she wasn't just relegated to the fitting room, that there's evidence that she did other things, she was out on the floor. What's your response to that? Well, there is evidence that she was relegated just to the fitting room for most of the day. Yes, there were times where she wasn't in the fitting room, but for the majority of the time, she was in the fitting room, even when she was a manager, and managers were not supposed to be in the fitting room. But the tumble that she had from her third complaint to being terminated within weeks of her final complaint is revealing. I have delegated three minutes to the EEOC, I respectfully ask that she be permitted to speak. Thank you. May it please the court, Gail Coleman for the EEOC. I just ask a question just preliminarily. Is there any sort of clearance that you have to undertake with the other part of the government? We've had previous cases where the EEOC filed, and then the Department of Justice came in and filed in the opposite position. That is extremely unusual, your honor. Involving a private sector defendant instead of a public sector? No, there is no clearance from the Department of Justice required. The district court in this case held that a retaliatory adverse action requires a materially adverse change in the terms and conditions of employment. The court is right that that would be the standard for a substantive discrimination, adverse employment action. But that is not the standard for an adverse action in the retaliation context. In the context of retaliation, an adverse action is anything that might dissuade a reasonable employee from protected conduct. The Supreme Court made this crystal clear in 2006 in Burlington Northern. Two months later, this court recognized that in Kessler. But the district court, in this case, did not even cite Burlington. The defendant, in its brief, does cite Burlington, but nevertheless, continues to analyze the retaliation claim with respect to what they call a materially adverse employment action. And they talk about it in terms of the terms and conditions of employment, especially on page 33 of their brief. This court, beginning with Kessler, generally has cited the Burlington standard correctly, but not always. In two unpublished decisions, Suazala and Carvalho, the court applied the substantive adverse action standard, not the retaliation adverse action standard. Both of those cases were unpublished, they were both pro se, and they probably weren't briefed well. Nevertheless, they're out there. The reason the EEOC is here today is to say that it is critical for this court to acknowledge the proper Burlington standard and to instruct future panels to apply Burlington and Kessler rather than the substantive discrimination standard for an adverse employment action. You have a view as to this court's decision, which is also unpublished, Forest versus New York State Office of Mental Health, which said that assignments within an employee's job description are generally not materially adverse. Well again, that would be terms and conditions of employment. What the Supreme Court said in Burlington is the context matters. And things that might not be materially adverse in one situation might very well be materially adverse in another. It depends, given the facts of the case, whether what happened would reasonably deter a reasonable employee from complaining. So whereas in one case, changing responsibilities within a job description may be trivial, in another case it may not. And we would argue that applying Burlington here, a jury could find a retaliatory adverse action, including but not limited to the eventual termination. What is it specifically that you would like this panel to do? Specifically, we would like this panel to reverse and remand because the court did not apply the correct standard for retaliation. And also to clarify the application of the Burlington standard. Thank you. Thank you. Good morning, Your Honor. Blair Robinson on behalf of the appellee. I want to begin with, if I may, with your last question, which is to the EOC, which is what would you like this court to do? And that obviously is intertwined with the retaliation standard. It's our position that the proper legal standard was applied. If for some reason this court concludes, however, that there needs to be some sort of clarification as to what the standard is on retaliation, it can do so in the context of a deferments for two key reasons. The first is- Do you disagree that the Supreme Court in Burlington held that it's not a significant change in conditions of employment standard? But whether a reasonable worker would be dissuaded? No, Your Honor, I do not disagree that the Burlington Northern standard was applied. Did the district court apply the Burlington Northern standard? I think that it did. I think that the Burlington Northern case, Your Honor, was cited by the appellant in her opposition to our motion for summary judgment. They argued the applicability of that standard. The district court in its analysis cited, didn't cite Burlington Northern, but cited multiple cases from this court. Did it do the analysis on whether the alleged conduct would have dissuaded a reasonable worker from making a charge of discrimination? Did it engage in that analysis? I think it's a little unclear because they did include the terms, terms and conditions of employment. But I also think, Your Honor, for the reasons that I was alluding to before, there's no reason why the court can't clarify the standard here and also issue an affirmance. And that's for two key reasons, and they go to Your Honor's prior questions, the first being, there are no actionable adverse employment actions here. And in any event, the individuals who made the decisions on the transfer and on the written warning, the record is undisputed, those individuals did not even know that the complaint was made. So they could not possibly have the requisite retaliatory motive, and therefore there's no causal connection that had been established. On the opening and closing, even if that's part of a job description, couldn't there be a point where the requirement becomes so onerous that it is problematic? I suppose there could be a circumstance, Your Honor, but that's not our circumstance here. So let me break that down into the two parts. I think there's a part of her claim that suggests that she was overly assigned to work in the fitting room. That's not age-based harassment, Your Honor, that's part of her job. She was required to do that, like everybody else who did that position. There's no suggestion- There is evidence that she spent most of her time in the fitting room, and that was not true of other employees. I don't think there, she claims on the first part, Your Honor, that she spent most of her time in the fitting room. And we have to assume that that's true. Right, but I don't think there's any evidence that she spent more time there in any way because of her age, and younger employees did not. Well, the first question is, did she spend more time in the fitting room than younger employees? Before you get to why, and there is a reasonable jury on this record could conclude that yes, she spent a lot more time in the fitting room than other employees. I actually don't think, Your Honor, that that evidence is in the record. And even if it were, it doesn't go to, and it's not part of a claim where there's actionable harassment that's asserted. That's the kind of workplace gripe, and we cite several cases in our brief, Your Honor, that talk about the fact that assignments and things like scheduling and things of that sort did not rise to the level of being adverse employment. Did the jury find that being relegated for most of your time to the fitting room would dissuade a reasonable worker from complaining? Well, she never complained about the excess time in the fitting room. What she complained about internally on the hotline was the comment that a counsel for the appellant referenced about being too old for promotion. So that was the comment that she complained about.  She made a few complaints, right? I mean, she called the hotline on more than one occasion. Yes, Your Honor. The first complaint, I believe, was when she complained about this interaction that she had with her supervisor, after which we took prompt rebuttal action. The second complaint, I believe, was maybe six to eight weeks later, where she inquired that she didn't think the voluntary transfer that she was seeking was happening fast enough. Now you say that, and correct me if I'm misunderstanding, that the employment of workers older than Garrett suggests that there wasn't a hostile work environment. But the mere presence of older employees really sheds no light on how any of these employees were treated, right? Let alone whether a reasonable employee in their shoes would have felt regarding the work environment. I agree with that, Your Honor, that that by itself doesn't demonstrate, but I think it's helpful context. When you consider the totality of the fact that this is someone who worked for a grand total of 13 months at three different retail store locations where she worked for different managers throughout that time period. The first store, she leaves the store, sends an email to the manager saying how great she was, how amazing it was to work with her, and she hopes she has the opportunity to do that again. Then you go to the second store, and the district court considered on the hostile work environment claim, Your Honor, all of the evidence that was proffered. And they didn't make credibility determinations as to whether or not I believe you that the statement was made too old. The court considered it and properly found that that was insufficient as a matter of law to state a cognizable hostile work environment claim. I think the one exception to that was there's a statute of limitations argument that's made where the district court did not consider the first window of time, the first store that she worked at, because that conduct fell outside of the limitations period. Isn't that error? No. Even though it's untimely for liability, it's relevant evidence. It's only relevant- Lots of cases that say even untimely conduct is relevant. It's only relevant, Your Honor, if they can show, which they have not shown, that it's part of the same unlawful employment practice. That's the standard of the Supreme Court's decision in Morgan. No such showing has been made here. Again, she worked for a different supervisor in a different state at the time, and I don't think there can be a showing that there was an unlawful employment practice. But again, I want to note one particular thing which may be relevant to that question, Your Honor, which is, and this is on their brief at page five. Even if you look at that window of time that was excluded. The only conduct about which she complains was, again, back to the point of she was relegated to the fitting room. And the district court considered that evidence and found that that's not age related. So even if this court were to consider that on appeal, that's still not a basis to reverse, because that's not part of what would be an actionable hostile work environment. Wasn't the transfer to Connecticut, in essence, a functional demotion? I don't think it was, Your Honor, and I think that the Second Circuit's decision in Kessler- Why not? Because she went, if I take a step back, this is someone who after she complained, we were looking to see if we could find a way to help her, to go to a place where she could feel more comfortable. So she was seeking out voluntary transfer situations. The first of those was New Jersey. She raised her hand and said, hey, I'd like to be considered for that job. She wasn't forced to go, it was of her own volition. She interviews for that job. The hiring manager had no idea about the complaint and decided not to fill that role at that given time. Switching gears and going to the Greenwich location, again, this is a circumstance where she was transferred voluntarily and took with her the same job, the same pay, the same benefits. Her role didn't change. If you contrast that with Kessler, Your Honor, which I think is proper to do under this circumstance, in which the appellant urges the court to do, Kessler involved a markedly different set of facts and circumstances. That's a situation where someone made an internal complaint, they were moved involuntarily to a different location, and once they were there, they were stripped of all meaningful job responsibilities that they had. The job was completely different, and they removed from their purview all direct reports that they once had. And it's our position, Your Honor, that that's completely different from the facts and the circumstances here. I guess- On the, just going back for a moment on the question of age. Everyone Garrett's age or older was in the Greenwich store, was in a junior position of customer associate, is that correct? I, Your Honor, I would have to check. I think there may have been one person who was in a managerial role as well, maybe a visual manager position. And the average age of the managers and supervisors was 34, I believe, according to the joint appendix. The chart, are you looking at the chart, Your Honor? Yeah. Okay. And so why isn't that at least circumstantial evidence that younger people were favored? It may be some evidence, Your Honor, but it's certainly not enough evidence to suggest that all of those people had a shared motive to discriminate against people who were in the protected class. It makes no logical sense that we would hire people who were in the protected class and have them work in those positions, only then to treat them in a disparate way. That, from our perspective, Your Honor, doesn't make sense. Well, the argument would be you hired them to do the dirty work. That would be the argument. And I think in this circumstance here, Your Honor, where we hired someone and then promoted her twice, multiple times. She made a complaint, we took it seriously, immediately investigated it, and tried to facilitate a voluntary transfer to her, we treated her fairly in all respects. And obviously, I'm out of time. Thank you. Thank you. Thank you, Your Honors. Just to touch on this argument that the conduct that Ms. Garrett experienced wasn't age related. We have to go back to the comments themselves that the supervisor made saying she was too old for promotion. Look at the context of it. This wasn't a stray remark or a joke. This was a conversation about Blair Garrett's ability to advance within the company, what her value was as a person. And Kelly Bentley said, look around you. Everybody's young. And she was right. Everyone's young. There are some low level positions that are filled by older people. But this was a management structure that was filled with older people. There's a number of factual issues. There were three complaints that she made to the hotline, not two. The transfer was certainly not voluntary to Greenwich. The argument, the factual position that anthropology has put forward was that she was offered a role to Greenwich and she took it. And she was told, it's Greenwich or you're fired. The idea that the people who were involved with her termination didn't know about her complaints. The decision to send her to Greenwich was made on the same phone call where the decider learned about Blair's complaint to the hotline. And we don't have to prove that everybody knew about it. Under this court's clear guidance, the plaintiff only needs to show corporate knowledge of her complaint. As far as the retaliation goes, it's clear that any person would find that the denial of a transfer being sent to a place that represents a setback in her career, continued hostility from the same supervisor, could reasonably dissuade someone from engaging in protected activity. And- Do you read the district court as having granted summary judgment with respect to the age discrimination claim? It noted the age discrimination claim specifically related to her termination. But in granting summary judgment, at least as I read it, it didn't address that claim. Am I misunderstanding? The district court seemed to think that it held that Blair Garrett received a written warning that talked about the future. Even though Blair Davis never received the warning, and the supervisor said she didn't write the warning before the meeting, so it's impossible that she could have received it. There's a lot of factual issues here, and age discrimination is a large topic. Blair Garrett's not the only one going through this. It's the next Me Too movement. Thank you for your time. Thank you. Thank you both. Thank you all three for your arguments. Court will reserve decision.